UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

CHONG DA WU,

    *Petitioner,*

v.                                             Case No.: 3:25-cv-1254-JEP-MCR

GARRETT J. RIPA, KRISTI NOEM,
PAMELA J. BONDI and WARDEN,

    *Respondents.*
_____/

## **ORDER**

Through counsel, Petitioner Chong Da Wu, an immigration detainee at Baker Correctional Institute, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) on October 17, 2025. Respondents filed a Response (Doc. 13), and Petitioner filed a Reply (Doc. 14). Ultimately, this Court concludes that the petition must be dismissed.

### I.

Petitioner is "a citizen and National of the People's Republic of China who has been present in Puerto Rico since 2006." (Doc. 1, ¶ 1). On October 10, 2008, an immigration officer determined that Petitioner was inadmissible under 8 U.S.C. § 1182(a)(7) and subject to removal under 8 U.S.C. § 1225. (Doc. 13 at 3, 13-3). Following six months of detention, on April 23, 2009, Petitioner

filed a petition for a writ of habeas corpus in the United States District Court for the District of Puerto Rico. (*Id.* ¶ 4). While that case was pending, United States Immigration and Customs Enforcement ("**ICE**") transferred Petitioner from Puerto Rico to Pompano Beach, Florida; thus, the assigned district judge transferred the case to the United States District Court for the Southern District of Florida. (*Id.*). On July 13, 2009, ICE released Petitioner from detention on an Order of Supervision ("**OSUP**"), and the assigned district judge dismissed Petitioner's petition. (*Id.* ¶ 5[a]).[1] Petitioner alleges that, from July 13, 2009, until June 9, 2025, he complied with all OSUP requirements, including reporting to his ICE officer. (*Id.* ¶ 5[b]). Respondents allege that Petitioner missed a scheduled report date on June 2, 2025. (Doc. 13 at 5). On June 9, 2025, Petitioner reported to an ICE office as ordered, and ICE officers took him into custody. (Doc. 1, ¶ 6). Petitioner is subject to a final order of removal. (Doc. 13-3, 13-6).

Based on these factual allegations, Petitioner raises the following claims for relief: (1) violation of due process under *Zadvydas v. Davis*, 533 U.S. 678 (2001) (Count One); (2) violation of procedural due process (Count Two); and (3) violation of the Administrative Procedure Act ("**APA**") (Count Three). (Doc. 1, ¶¶ 22–36). Alternatively, Petitioner asks this Court to grant him relief

---

[1] Petitioner's complaint includes two paragraphs numbered as 5. Thus, this Court distinguishes them as [a] and [b].

2

pursuant to the Mandamus Act, 28 U.S.C. § 1361, and "issue a writ or writs of mandamus, ordering the Respondents to either remove him or release him" (Count Four). (*Id.* ¶¶ 37–41). As relief for Counts One and Two, Petitioner seeks immediate release from ICE custody. (*Id.* ¶ 28). As relief for Count Three, he asks this Court to direct Respondents "to schedule and complete [Petitioner's] removal within thirty (30) days under the [APA]." (*Id.* ¶ 36).

## II.

Before addressing the merits, this Court examines its jurisdiction. 28 U.S.C. § 2241 extends the writ of habeas corpus to those who are "in custody in violation of the Constitution or laws or treaties of the United States." 5 U.S.C. § 704 provides for judicial review for certain agency actions. And 28 U.S.C. § 1361 provides district courts with original jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, Respondents argue, among other things, that (1) section 1252 of the Immigration and Nationality Act ("**INA**") strips this Court of jurisdiction to hear this case, and (2) the availability of alternate avenues of relief precludes Petitioner from bringing the APA claim. (Doc. 13 at 14–22). In addition, this Court will address whether mandamus jurisdiction exists under 28 U.S.C. § 1361.

## A. Section § 1252 of the INA

Respondents first point to 8 U.S.C. § 1252(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter."

What appears, at first glance, to be a sweeping jurisdictional bar is in fact "much narrower." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* (quoting § 1252(g)). Section 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions" but rather "refer[s] to just those three specific actions themselves." *Jennings v. Rodriguez*, 583 U.S. 281, 294 (2018); *see also Camarena v. Dir., Immigr. & Customs Enf't*, 988 F.3d 1268, 1272 (11th Cir. 2021) ("§ 1252(g) bars only those claims that directly relate to [those] three specific actions." (quotation omitted)). Thus, the jurisdictional analysis centers around "the action being challenged," *Canal A Media Holding, LLC v. U.S. Citizenship & Immigr. Servs.*, 964 F.3d 1250, 1258 (11th Cir. 2020), and whether it forms "the basis of the claim," *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013). Hence, while section 1252(g) bars judicial

4

review of "certain exercises of discretion by the attorney general," it does not bar judicial review of "the underlying legal bases for those discretionary decisions and actions." *Madu v. U.S. Att'y. Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006).

Respondents also point to 8 U.S.C. § 1252(b)(9), also known as the "Zipper Clause." It provides, in pertinent part, that:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section.

§ 1252(b)(9).

This provision bars a court from reviewing only "'an order of removal,' 'the decision to seek removal,' or 'the process by which removability will be determined.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (quoting *Jennings*, 583 U.S. at 294). In other words, "the zipper clause only affects cases that 'involve[ ] review of an order of removal." *Canal A Media Holding, LLC*, 964 F.3d at 1257 (quoting *Madu*, 470 F.3d at 1367).

Here, Petitioner does not challenge Respondents' "decision or action" to commence removal proceedings, adjudicate his case, or execute his removal order. Nor does Petitioner challenge the final removal order itself. Rather, Petitioner contests the underlying constitutional and statutory validity of his

5

detention under these circumstances. *See also Zadvydas*, 533 U.S. at 688 ("The aliens here, however, do not seek review of the Attorney General's exercise of discretion; rather, they challenge the extent of the Attorney General's authority under the post-removal-period detention statute. And the extent of that authority is not a matter of discretion."); *Perez v. Noem*, No. 2:25-cv-00429-JES, 2025 WL 2306735, at *1–2 (M.D. Fla. Aug. 11, 2025) (concluding that section 1252 did not bar the petitioner's challenge to the legality of his detention).[2] Accordingly, section 1252 does not bar jurisdiction over Petitioner's claims.

## B. Jurisdiction to Bring APA Claim

In Count Three, Petitioner alleges that Respondents' "delay or inaction in completion of [ ] removal" violates the APA, which requires agencies to conclude matters presented to them within a reasonable time. (Doc. 1, ¶¶ 29–36); *see also* 5 U.S.C. § 555(b). As relief, Petitioner asks this Court to direct Respondents "to schedule and complete [his] removal within thirty (30) days[.]" (Doc. 1, ¶ 36). Respondents argue that Petitioner is precluded from relief under the APA because the writ of habeas corpus provides an adequate remedy. (Doc. 13 at 14–15).

---

[2] Although district court orders are non-precedential, they may be cited as persuasive authority. *See Stone v. First Union Corp.*, 371 F.3d 1305, 1310 (11th Cir. 2004) (noting that, "[a]lthough a district court would not be bound to follow any other district court's determination, the decision would have significant persuasive effects").

The APA limits judicial review of agency actions to final agency actions "for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The alternate remedy "need not provide an identical review" as the APA can provide, but rather need only "offer[ ] the same genre of relief." *Mize v. Pompeo*, 482 F. Supp. 3d 1317, 1343 (N.D. Ga. 2020) (quoting *Hinojosa v. Horn*, 896 F.3d 305, 310 (5th Cir. 2018)). Importantly, the Supreme Court has held that when a detainee's claims "necessarily imply the invalidity" of his confinement, those claims "must be brought in habeas." *Trump v. J. G. G.*, 604 U.S. 670, 672 (2025) (quotation omitted).

Here, the writ of habeas corpus provides an adequate remedy. Whether by habeas corpus or the APA, Petitioner asserts the same facts to seek effectively the same relief: release from detention, whether by deportation or otherwise. Because Petitioner challenges the validity of his detention, "habeas corpus, not the APA, is the proper vehicle here." *Id.* at 674 (Kavanaugh, J., concurring); *see also Singh v. Noem*, No. 2:25-cv-00157-SCM, 2026 WL 74558, at *7 (E.D. Ky. Jan. 9, 2026) (declining to review petitioner's APA claim because writ of habeas corpus offered adequate remedy to petitioner's detention); *Juarez Mendez v. Raycraft*, No. 1:25-cv-1323, 2025 WL 3214100, at *2 n.3 (W.D. Mich. Nov. 18, 2025) (same); *Intriago-Sedgwick v. Noem*, No. 1:25-

cv-01065-MIS-LF, 2025 WL 3688155, at *8 n. 7 (D.N.M. Dec. 19, 2025) (same).[3]

Accordingly, Count Three is dismissed for lack of jurisdiction. *See Heslop v. Att'y Gen. of U.S.*, 594 F. App'x 580, 584 (11th Cir. 2014).[4]

### C. Mandamus Jurisdiction under 28 U.S.C. § 1361

Petitioner pleads Count Four in the alternative, stating that if this Court does not grant relief under Counts One or Two, he asks this Court to issue a writ of mandamus ordering Respondents to either remove him or release him. (Doc. 1, ¶¶ 37–41).

"[M]andamus is an extraordinary remedy which should be utilized only in the clearest and most compelling of cases." *Hakki v. Sec'y, Dep't of Veterans Affs.*, 7 F.4th 1012, 1036 (11th Cir. 2021) (quoting *Cash v. Barnhart*, 327 F.3d 1252, 1257 (11th Cir. 2003)). "[T]he test for mandamus jurisdiction is 'whether mandamus would be an appropriate means of relief.'" *Id.* (quoting *United States v. Salmona*, 810 F.3d 806, 811 (11th Cir. 2016)).

To obtain mandamus relief, a petitioner must demonstrate "(1) the [petitioner] has a clear right to the relief requested; (2) the [respondent] has a

---

[3] One district court has also held that a detention does not constitute a "final agency action" under the APA. *Gamez Lira v. Noem*, No. 1:25-CV-00855-WJ-KK, 2025 WL 2581710, at *4 (D.N.M. Sept. 5, 2025).

[4] This Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when this Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060-61 (11th Cir. 2022); Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

clear duty to act; and (3) no other adequate remedy [is] available," *Cash*, 327 F.3d at 1258 (quotations omitted)—that is, the petitioner "has exhausted all other avenues of relief," *id.* (quoting *Heckler v. Ringer*, 466 U.S. 602, 616 (1984)). Importantly, the purpose of mandamus relief is "to enforce a right which has already been established," and "not to establish a legal right." *Davis v. United States*, 558 F. App'x 898, 901 (11th Cir. 2014) (quoting *United States v. Nordbye*, 76 F.2d 744, 746 (8th Cir. 1935)).

Here, as Petitioner seeks effectively the same relief in mandamus as in habeas—release from detention—he cannot show that he lacks an available adequate remedy. In addition, Petitioner has not established a clear right to the relief he seeks: this Court does not have jurisdiction over the APA claim (*see supra* Part II.B), and Petitioner's *Zadvydas* claim is premature (*see infra* Part IV). Accordingly, Count Four is dismissed for lack of jurisdiction.

### III.

This Court must address an additional procedural issue: exhaustion of administrative remedies. Respondents assert that Petitioner must pursue a bond hearing in front of an immigration judge before challenging his detention in habeas. (Doc. 13 at 21–22).

In habeas proceedings, exhaustion is a non-jurisdictional requirement. *Santiago-Lugo v. Warden*, 785 F.3d 467, 474–75 (11th Cir. 2015) ("The exhaustion requirement [under 28 U.S.C. § 2241] is still a requirement; it's

9

just not a jurisdictional one."); *see Paz Nativi v. Shanahan*, No. 16-CV-8496 (JPO), 2017 WL 281751, at *1 (S.D.N.Y. Jan. 23, 2017) ("There is no statutory requirement of administrative exhaustion before immigration detention may be challenged in federal court by a writ of habeas corpus; however, such exhaustion is generally required as a prudential matter.").

The Supreme Court in *Johnson v. Arteaga-Martinez* held that 8 U.S.C. § 1231(a)(6) does not require the government to provide a bond hearing to a detained alien, noting that the text of the statute "does not address or even hin[t] at" such a requirement. 596 U.S. 573, 580-81 (quotation omitted); *see also Cruz v. Bondi*, No. 25-cv-262-JJM-PAS, 2025 WL 3295485, at *6 (D.R.I. Nov. 26, 2025) ("[B]ecause [petitioner] is not statutorily eligible for a bond hearing before an IJ . . . the only agency that is able to review his continued detention is ICE.").

Here, because section 1231(a)(6) governs Petitioner's current detention (*see infra* Part IV), Petitioner may not seek a bond hearing in front of an immigration judge.[5] Accordingly, this Court finds that Petitioner has no further requirement to exhaust administrative remedies.

---

[5] The Code of Federal Regulations may also provide ICE the authority to review Petitioner's detention. 8 C.F.R. § 241.4; *see Cruz*, 2025 WL 3295485, at *2 (explaining how ICE conducts such "custody reviews"). Respondents failed to raise this procedure as a possible administrative remedy. (Doc. 13 at 21–22). Because "a court need not inquire into exhaustion on its own," *Santiago-Lugo*, 785 F.3d at 475, this Court does not address whether Petitioner must exhaust administrative review by ICE before filing this habeas petition.

10

## IV.

This Court now turns to the merits of Counts One and Two. Petitioner alleges that he is entitled to release under *Zadvydas*[6] because his post-removal order detention exceeds six months and there is no significant likelihood of removal in the reasonably foreseeable future. (Doc. 1, ¶¶ 22–28). Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). The government may then detain an alien beyond the statutory removal period if he is, among other classifications, deemed inadmissible under 8 U.S.C. § 1182. 8 U.S.C. § 1231(a)(6).

---

[6] Petitioner labels Count One as "Violation of Due Process" and Count Two as "Procedural Due Process Challenge." (Doc. 1, ¶¶ 22–28). However, the argument following both Counts contends only that his detention violates *Zadvydas* because "there is no significant likelihood of removal in the reasonably foreseeable future[.]" (*Id.* ¶ 27). Therefore, this Court will treat Counts One and Two as a single *Zadvydas* claim. Insofar as Petitioner intends to challenge the revocation of his OSUP or to raise any other claim, such a claim is not properly before this Court.

The Supreme Court in *Zadvydas* held that indefinite detention of aliens raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal.*" *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient

evidence establishing that there is "a significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

Here, this Court finds that the presumptively reasonable six-month period has not expired. A split of authority exists as to when the six-month period begins. Some courts have determined that each period of detention restarts the removal-period clock. *See, e.g.*, *Barrios v. Ripa*, No. 1:25-cv-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) (rejecting a petitioner's argument "that his detention should be counted in the aggregate based upon his prior detentions"); *Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025) ("[T]he removal-period clock restarts when an alien subject to a removal order is again detained by ICE."); *Leybinsky v. U.S. Immigr. & Customs Enf't*, No. 10 CIV. 5137 RA, 2013 WL 132544, at *9 (S.D.N.Y. Jan. 8, 2013) (collecting cases), *vacated as moot*, 553 F. App'x 108 (2d Cir. 2014). Other courts have aggregated all periods of detention following an order of removal, regardless of whether there were any intervening periods of release from custody between periods of detention. *See, e.g.*, *Jaranow v. Bondi*, No. 2:25-cv-02396-TL, 2026 WL 35864, at *3 (W.D. Wash. Jan. 6, 2026)

13

(collecting cases from the Ninth Circuit that "have found that the six-month period of detention need not be consecutive to reach the limit established in *Zadvydas*"); *Patel v. Bondi*, No. CV 25-16218 (KMW), 2025 WL 3294353, at *2 (D.N.J. Nov. 26, 2025) (finding that the court must "consider the entire period of [the p]etitioner's detention"—not just the length of the current detention).

This Court believes that aggregating the past period of detention is not appropriate here. Noting that the purpose of detention is to "assur[e] the alien's presence *at the moment of removal*," *Zadvydas*, 533 U.S. at 699 (emphasis added), this Court is not persuaded that Petitioner's previous nine-month detention from 2008 to 2009—seventeen years ago—is relevant to today's determination. To rule otherwise would grant a permanent "get-out-of-jail-free" card to Petitioner or any other detainee who has been held for more than six months at any time in the past. *See Meskini v. Att'y Gen. of United States*, No. 4:14-CV-42-CDL, 2018 WL 1321576, at *3 (M.D. Ga. Mar. 14, 2018). Moreover, "adjudicating the constitutionality of every re-detention would obstruct an area that is in the discretion of the Attorney General—effectuating removals." *Barrios*, 2025 WL 2280485, at *8. Thus, in this case, this Court will consider only the current detention when determining whether the presumptively reasonable six-month period has passed.

In addition, courts generally have held that the six-month period is calculated from the time the detainee files the habeas petition, even if the

petition remains pending beyond the expiration date. *Akinwale*, 287 F.3d at 1052 ("This six-month period thus must have expired at the time [petitioner's] § 2241 petition was filed in order to state a claim under *Zadvydas*."); *see also Thelemaque v. Barr*, No. 20-20467-CIV, 2020 WL 13551808, at *2 (S.D. Fla. Mar. 30, 2020) (denying habeas petition as premature when petitioner was detained on August 2, 2019, and filed his petition within the six-month period on January 27, 2020, despite the district court issuing its ruling beyond the six-month period). This rule serves to prevent a flood of premature *Zadvydas* claims in the federal courts. *See Fahim v. Ashcroft*, 227 F. Supp. 2d 1359, 1364 (N.D. Ga. 2002) ("A strict construction of that time limit serves a gatekeeping function to ensure that federal courts are not unnecessarily weighed down with hasty complaints[.]"); *Mehighlovesky v. U.S. Dep't of Homeland Sec.*, Civil No. 12-902, 2012 WL 6878901, at *2 (D. Minn. Dec. 7, 2012) ("If the rule were otherwise, removable aliens would have no incentive to wait for their potential *Zadvydas* claims to ripen, and the federal courts might then be inundated with pre-emptive *Zadvydas* claims[.]"), *report and recommendation adopted*, 2013 WL 187553 (D. Minn. Jan. 17, 2013).

Petitioner filed this case on October 17, 2025, which is only four months and eight days since the start of his current detention on June 9, 2025.

Therefore, Petitioner's *Zadvydas* claim is not ripe.[7] Accordingly, Counts One and Two are dismissed without prejudice.

Accordingly, it is **ORDERED**:

1. Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **DISMISSED WITHOUT PREJUDICE**.

2. The Clerk is **DIRECTED** to terminate any motions, dismiss all counts without prejudice, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on February 3, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

Jax-9 1/15
c:
Counsel of Record

---

[7] Because the *Zadvydas* claim is not ripe, this Court need not inquire at this time into whether there is a significant likelihood of removal in the reasonably foreseeable future.